**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>COMMUNITY HOME HEALTHCARE LLC, *et al* | No. 1:26-cr-00114-JAW |

**GOVERNMENT'S MOTION TO CONTINUE TRIAL AND RESPONSE TO DEFENDANTS' MOTION TO CONTINUE MOTIONS DEADLINE AND PROPOSED TRIAL SCHEDULE**

The United States of America, by and through its attorneys, Andrew B. Benson, United States Attorney for the District of Maine, Nicholas M. Scott and Sarah A. Kiewlicz, Assistant United States Attorneys, respectfully files this response to the Defendants' motion to extend the deadline to file pretrial motions (Dkt. 99) and to the Defendant's proposed pretrial schedule. (Dkt. 115). As set forth below, the defendants have functionally moved to continue trial to January 2027 and to continue the pretrial motions deadline to December 21, 2026. The Government also moves for trial to be continued to January 2027 and asks the Court to find that the ends of justice served by granting the defendants' and the Government's motions to continue trial outweigh the best interest of the public and the defendants in a speedy trial. As further detailed herein, the Government does not object to a reasonable extension of the pretrial motions deadline but does object to the defendants' proposed pretrial motions schedule.

**BACKGROUND**

Barely a month ago, on October 22, 2026, the grand jury returned an Indictment charging the defendants with a complex health care fraud conspiracy. Dkt. 3. As alleged in Count One of the Indictment, the 7 defendants conspired to defraud MaineCare

(Maine's Medicaid program) by making false entries in an electronic visit verification ("EVV") system and sharing passwords and login credentials that were used in making these entries. *Id.* These EVV entries were then used to support claims to MaineCare and to obtain payment for personal care services which had not actually been provided. *Id.* Count 2 alleges that defendant Alkhalaf made false statements to an FBI agent. Count 3 alleges that Defendants Abd and Manahe obstructed the underlying health care crime investigation.

The investigation of this conspiracy involved remote video surveillance which occurred over two separate periods, the first period lasting over 2 months, and the second period lasting over 10 months. The investigation also involved, among other methods, the analysis of MaineCare records, EVV records, electronic location data, Defendant Community's records, and seized cell-phone communications, including text and audio messages, most of which were in Arabic. Certain defendants made statements to law enforcement, some in English and some in Arabic. The Government anticipates calling multiple trial witnesses, including law enforcement and non-law enforcement witnesses, some of whom speak Arabic and require interpreters. At least one defendant will require an Arabic interpreter at trial. In addition, some of the Government's witnesses will need to travel from out-of-state to appear at trial.

The defendants were arraigned on the Indictment in this matter on October 27, 2026. The Hon. John C. Nivison, U.S. Magistrate Judge, scheduled trial in this matter to commence on December 3, 2026, and ordered that defendant[s] file all pretrial motions by November 10, 2026. Dkt. 86. After bail hearings, of the defendants were released pursuant to Orders setting conditions of release.

On November 3, 2026, Defendant Abd filed a motion to set the place of trial in Portland, Maine. Dkt. 97.

On November 6, 2026, the Government met and conferred with counsel for Defendants Abd and Community.[1] The Government outlined the scope of materials to be produced and discussed the anticipated timing of discovery to be produced. The Government attempted to be transparent with Abd's counsel concerning the scope and anticipated timeline of discovery. The parties discussed an initial 30-day extension of the pretrial motions deadline, which the Government indicated it would not oppose. Based on this discussion, the Government reasonably anticipated that Defendant Abd would move to continue trial, since the 30-day extension would place the motions deadline after the December 3, 2026, trial date.

On November 9, 2026, defendant Abd filed a motion requesting a 21-day, rather than a 30-day, extension of the deadline to file pretrial motions. The granting of this extension would have set the pretrial motions deadline to December 1, 2026, two days before trial was set to commence in Bangor. Dkt. 99.

On November 10, 2026, the Government emailed the clerk of the court and Abd's counsel to alert them that the Government believed there had been a misunderstanding amongst counsel, and the Government wanted an opportunity to respond to Abd's motion to extend the pretrial motions deadline.

On November 12, 2026, the Court scheduled a conference of counsel, to be held on November 13, 2026, to discuss the pending motions to move the trial to Portland and

[1] The Government separately met and conferred with other defendants' counsels, including counsel for defendant Alyaseen (November 5), counsel for defendant Sura Almohammed (November 6), counsel for defendant Alkhalaf. Counsel for defendant Al Rashid advised that he was not able to meet with the Government, due to an upcoming trial and his preparation for the same. Counsel for defendant Manahe did not meet with the Government but the Government did confer with Manahe's counsel by email.

to continue the pretrial motions deadline. On the same date, the Government sent defendants' counsels a proposed protective Order concerning discovery and requested the parties to notify the Government as to any objections to the proposal. Thereafter, multiple counsels communicated objections and requests for modification to the proposed order to the Government.

At the November 13, 2026, telephonic conference of counsel, the Government articulated why the Indictment was properly filed at the District Court in Bangor and deferred to the Court as to whether the factors set forth in Fed. R. Crim. P. 18 weighed more strongly in favor of holding the trial in Portland, or Bangor. The Court granted Defendant Abd's motion to move the trial to the District Court in Portland. The Government then addressed its position with respect to the Defendant's motion to extend the pretrial motions deadline. In particular, the Government noted that the schedule requested by the Defendant would create uncertainty for the parties and for the Court, as to whether the trial would occur in December, as the Defendant's motions could be filed until December 1, 2026, the date scheduled for jury selection in the District Court in Portland. The Government also provided an update as to progress on providing the defendants with discovery and indicated that the Government was seeking a protective order concerning discovery and anticipated providing the defendants with its first production the following week. Counsel for Abd asked that the Court set a deadline for discovery to be produced and the Court declined the request. The Court suggested that the parties meet and confer concerning the trial and motions scheduled and ordered the parties to notify the Court as to the status of the motion to extend time to file pretrial motions by November 20, 2026. During the conference, the Court also expressed that it seemed unlikely that the parties could proceed to trial in December

given that discovery had been described as voluminous and the case appeared to be complex.

Shortly after the November 13 conference concluded, the Government contacted all counsel and suggested that the parties meet on November 17, to discuss the motions and trial schedule, as well as the proposed protective order. On November 17, the parties met by video conference. In response to counsel's input, the Government agreed to certain modifications of the proposed protective order. Defendants' counsels indicated that they would not object to the proposed order but would reserve the right to seek further modifications after reviewing the discovery. The Government acknowledged that terms of the proposed order permitted the parties to seek further modification and that the parties could also agree to de-designate materials as not needing protection. At the conference, the parties further discussed the status of discovery. The Government advised that the initial discovery production would be provided to counsel as soon as the protective order was issued. The Government further advised that counsel would need to provide suitable digital storage devices to receive copies of the remote video surveillance footage, which consisted of 8-10 terabytes of data. Counsel agreed to drop off digital storage devices at the United States Attorney's Office and to pick up the initial production. Later, on November 17, the Government filed its unopposed motion for a protective order (Dkt. 114), which was granted by the Court on November 18. (Dkt. 115).

On November 18, 2026, Abd's counsel filed a document titled "Status Report Regarding Pending Motion to Extend Time for Pretrial Motions, Implications of the Speedy Trial Act, and Proposed Pretrial Schedule." Dkt. 115. In this filing, Abd proposed a new "Pretrial Schedule," and requested the Court to reset deadlines consistent with that schedule. According to Abd's proposal, jury selection would be set to commence on

January 4, 2027. Abd proposed the following additional deadlines: the Government would begin production within three days of entry of a protective order; the Government substantially completes production by November 25; the Government provides disclosures under Fed. R. Crim. P. 16(a)(1)(G)(ii); and Fed. R. Evid. 404(b)(3); the parties notify the Court whether they anticipate filing pretrial motions by December 14; the defense provides expert disclosures by December 18; the parties file pretrial motions by December 21, 2026; the parties file motions *in limine*, trial briefs, and proposed jury instructions by December 28, 2026. Abd's motion did not clearly identify any grounds for trial to be moved to January 2027, nor any reasons why the Court should adopt her proposed schedule. With respect to speedy trial, Abd noted that the filing of her motion to continue trial, which remains pending, tolled the speedy trial clock. Abd contended that no continuance or exclusion of time under the 18 U.S.C. § 3161(h)(7) was required, since the speedy trial clock would not expire until late January 2027. Abd then reiterated that the defendants did not request a continuance or an exclusion of time, and that a waiver of speedy trial was not necessary. All defendants joined Abd in requesting that the Court order her proposed trial schedule.

On November 18, 2026, shortly after the issuance of the protective Order, the Government advised all counsel that the initial production was ready to be picked up by counsel at the United States Attorney's Office. All counsel retrieved the items expeditiously. The Government's initial production consisted of electronic storage devices furnished by the Government, which contained approximately 37.5 gigabytes of data. Included in the production were 6,877 documents totaling at least approximately 119,761 pages, among other items. The initial production included the following categories of materials, among others:

a. Search warrants and affidavits authorizing the search of each defendant's residence and the business premises of defendant Community;

b. Search warrants authorizing the search of electronic devices found in those locations or on the defendant's persons;

c. Search warrants authorizing the seizure of electronic location information from each defendant's cellular telephone providers;

d. Law enforcement reports detailing the searches of the premises and the seizure of evidence from those premises;

e. Law enforcement reports detailing statements made by the Defendants during interviews with law enforcement;

f. Scanned documents and photographs obtained during the search of the premises;

g. MaineCare claims records;

h. Electronic visit verification records;

i. Voluminous business records seized from or otherwise obtained from defendant Community's premises; and

j. Materials associated with prior Maine Department of Health and Human Services (MDHHS) audits of Community.

Since the disclosure of the aforementioned materials, the Government has received inquiries from multiple defense counsels concerning the materials produced. For instance, there was an error saving material to the storage device provided to Defendant Manahe. When Manahe's counsel notified the Government of the error on November 19, the Government saved the material on a new device, which was provided to counsel on November 20. The Government has also received requests from Abd's

counsel to further modify the Protective Order or to remove certain materials from designation as "Sensitive Materials" protected by the Order. The Government is considering these requests and hopes to resolve these matters through further consultation and agreement with counsel. Nonetheless, resolving these issues may require further motions.

In addition, the Government has received digital storage devices - to duplicate the 8-10 terabytes of remote surveillance footage - from at least three defendants' counsels. The Government's technical staff have advised that the duplication of the surveillance footage must be performed on one storage device at a time. The first of these devices was provided to the Government on November 18, 2026, and the duplication process started the same day. Due to the size of the footage, the duplication process for the first device was not completed until November 20, 2026. The Government continues to duplicate the remaining storage devices and is still waiting for certain counsel to provide storage devices.

The Government is still in the process of providing additional discovery pursuant to Fed. R. Crim. P. 16, including among other items: body worn camera footage recorded during the searches and audio recordings of the defendants' statements to law enforcement (over 75 files); certain communications and data seized from the defendants' electronic devices; historical cell site information; and additional records obtained during the investigation. These materials are voluminous, and the Government anticipates providing them to counsel within the next 1-2 weeks.

## ARGUMENT

"[T]he Speedy Trial Act generally requires a trial to begin within 70 days of the filing of an information or indictment or the defendant's initial appearance... but the Act recognizes that criminal cases vary widely and that there are valid reasons for greater delay in particular cases." *Zedner v. United States*, 547 U.S. 489, 497 (2006) (*citing* 18 U.S.C. § 3161(c)(1)). "To provide the necessary flexibility, the Act includes a long and detailed list of periods of delay that are excluded in computing the time within which trial must start." *Id.* (*citing* § 3161(h)). "Much of the Act's flexibility is furnished by [§ 3161(h)(7)],[2] which governs ends-of-justice continuances... which permits a district court to grant a continuance and to exclude the resulting delay if the court, after considering certain factors, makes on-the-record findings that the ends of justice served by granting the continuance outweigh the public's and defendant's interests in a speedy trial. This provision gives the district court discretion—within limits and subject to specific procedures—to accommodate limited delays for case-specific needs." *Id.* at 498-499.

Either the Government or the defendant can request excludable delay. The Speedy Trial Act provides that delay shall be excluded when it "result[s] from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." § 3161(h)(7). The Act further imposes a procedural requirement, that "[n]o such period

[2] The Speedy Trial Act was subsequently amended after *Zedner.* The requirement at issue in *Zedner,* that a district court "set[ ] forth, in the record of the case, either orally or in writing, its reasons for finding" an ends of justice continuance, now appears at § 3161(h)(7)(A) of the Act.

of delay resulting from a continuance granted by the court … shall be excludable … unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." *Id.* The Act provides explicit direction as to how courts should make this determination, listing factors, among others, that the court "shall consider" and excluding other factors that do not provide a basis for an excludable continuance. § 3161(h)(7)(B). While the Act is ambiguous as to precisely when the findings must be set forth on the record, "[t]he best practice, of course, is for a district court to put its findings on the record at or near the time when it grants the continuance." *Zedner,* 547 U.S at 507 & n. 7.

*Zedner* and the text of the Speedy Trial Act make clear a defendant's waiver is neither necessary, nor sufficient standing alone, to exclude delay from the speedy trial clock. The procedures outlined in the Speedy Trial Act must be followed even where a defendant waives them or consents to delay. "§ 3161(h) has no provision excluding periods of delay during which a defendant waives the application of the Act, and it is apparent from the terms of the Act that this omission was a considered one." *Zedner,* 547 U.S. at 500. Instead, "the Act demands that defense continuance requests fit within one of the specific exclusions set out in [§ 3161(h)(7)]." *Id.* This is consistent with the purposes of the Act, which was designed with the public interest in speedy trials "firmly in mind." *Id.* at 501.

Departing from the procedures outlined in Speedy Trial Act, Fed. R. Crim. P. 47[3] and longstanding practice in this District, defendants have jointly proposed a schedule

---

[3] "A party applying to the court for an order must do so by motion." Fed. R. Crim. P. 47(a). "A motion must state the grounds on which it is based and the relief or order sought." Fed. R. Crim. P. 47(b).

that would allow the parties to file pretrial motions by December 21, 2026, and would set jury selection to commence on January 4, 2027. Defendants insist that their proposed schedule is not a request for continuance, and that they do not waive speedy trial. According to the defendants, a continuance and waiver is only necessary when a defendant requests that the trial be continued beyond the 70-day period set forth in the Act. No matter how defendants characterize their proposed schedule, the Court should recognize it as a motion to continue trial and to extend the pretrial motions deadline. "When a motion is silent as to the location of its procedural moorings, an inquiring court must look to the motion's substance, including the relief requested, in order properly to characterize it." *United States v. Morillo*, 8 F.3d 864, 867 (1st Cir. 1993). *See also United States v. Ortiz*, 741 F.3d 288, 291 (1st Cir. 2014) ("Ascertaining a motion's character depends upon its substance, not its appellation.")

The defendants have not identified any rule or law which allows a defendant to simply move the trial date without a motion to continue and without setting forth a factual basis for that relief. Nor have defendants identified any legal basis for dispensing with § 3161(h)(7)'s procedural requirements. Perhaps the defendants seek a tactical advantage in whittling time off the Speedy Trial Clock by seeking to delay trial in this manner. Nonetheless, the "guardians of the speedy trial clock: the court, and to a lesser extent, the government" are obliged to make a clear record identifying the reason for delay. *United States v. Barnes*, 159 F.3d 4, 15 (1st Cir. 1998) (Dismissing indictment without prejudice where there was no record as to reason for delay and district court did not make necessary findings to exclude delay from speedy trial clock.) Simply put, where delay occurs, it "must be accounted for." *Id.*

Once the Court determines the reasons for the continuance, it must consider the factors outlined in § 3161(h)(7)(B) and make findings as to whether "the ends of justice served by [granting the continuance] outweigh the best interest of the public and the defendant in a speedy trial." The factors set forth in Subsection (7)(B) strongly support continuing trial of this matter. Specifically, this case is "so complex, due to the number of defendants, the nature of the prosecution [] that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by [the Act]." § 3161(h)(7)(B)(ii). Based on the nature of the charges alleged in the Indictment, the voluminous discovery already provided, and the number of defendants, this case is sufficiently complex to warrant a continuance under § 3161(h)(7)(B)(ii). The Government has already produced voluminous discovery and will produce further voluminous materials in the upcoming weeks. The case involves significant amounts of electronic evidence, including 8-10 terabytes of surveillance footage, and seized audio and text communications, much of which have been and are being translated from Arabic to English.

Courts have found that ends of justice continuances were warranted in similarly complex cases. *See United States v. Balsam*, 203 F.3d 72, 80 (1st Cir. 2000) (Rejecting defendant's argument that former counsel rendered ineffective assistance by agreeing to continuance of complex multi-defendant case, the 1st Circuit observed that "[b]ased on the sheer volume of the discovery materials disclosed by the government, [defendant's] attorneys would have rendered less than effective assistance had they insisted on proceeding to trial precipitously, without adequate opportunity to review the strengths and weaknesses of the government's evidence.") *See also*, *United States v. Bomman*, No. CR 24-10131-NMG, 2024 WL 4626241, at *2 (D. Mass. Oct. 30, 2024) ("The volume of

electronic discovery in this case, the ongoing need for counsel to resolve issues related to the cellphones and the protective order, and the government's need for adequate trial preparation thus offers a sufficient basis for the Court to conclude that a continuance reasonably meets the ends of justice."); *United States v. Merideth Norris,* No. 2:22-cr-00132-JAW, Dkt. 25, (D. Me. Nov. 18, 2022) (Judge Torresen granted joint motion by the government and sole defendant to continue trial, finding that the failure to grant the continuance would result in a likely miscarriage of justice and it would be unreasonable to expect adequate trial preparation without a continuance, in a complex case involving thousands of scanned patient medical files, data from health care benefit programs including Medicaid, and financial data, and the defendant needed time to review such materials.); *United States v. McNeil* No. 25-00447 (GC), Dkt. 55 (D. N.J. March 30, 2026) (Over both defendants' objections, the court granted the government's ends of justice motion to continue trial in complex capital case involving voluminous Rule 16 discovery provided to defendants on a rolling basis, including "[h]undreds of gigabytes of data" and "more than 2,000 documents and data files," which was to be supplemented by "another discovery production."); *United States v. Manahe et al*, No. 2:22-cr-00013-JAW (D. Me. Apr. 5, 2022) (Court granted defense motion to continue trial and motions deadline where the government had provided a significant amount of discovery and additional discovery had yet to be produced, and the defense needed additional time to obtain and review discovery.)

Even where cases are "not so unusual or complex," § 3161(h)(7)(B)(iv), courts may find that a "failure to grant a continuance… would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." The First Circuit has

"routinely held" that counsels' need for reasonable time to prepare for trial is "sufficient to grant [a] continuance[ ] and exclude the time under the Speedy Trial Act." *United States v. Harris*, 660 F.3d 47, 51 (1st Cir. 2011). The Court may also consider whether the failure to grant the continuance would result in a miscarriage of justice. § 3161(h)(7)(B)(i). Given the early stage of this case, the parties need additional time to complete the discovery process, to consider whether any pretrial motions are warranted, and to prepare for trial. Moreover, failure to grant the continuance would deprive the defendants of a reasonable period to review and investigate the Government's evidence and would likely result in a miscarriage of justice. Here, the volume of discovery and the need for the parties to complete discovery and prepare for trial warrants an ends of justice continuance pursuant to § 3161(h)(7)(B)(i) and (iv).

The Government also respectfully requests that the Court find that the ends of justice served by continuing the pretrial motions deadline outweigh the best interest of the public and the defendants in a speedy trial. A defendant's request to extend the pretrial motions deadline is not automatically excludable under § 3161(h)(1)(d). Instead, the text of § 3161(h)(1)(d) "renders automatically excludable only the delay that occurs *from the filing* of the motion through the conclusion of the hearing on, or other prompt disposition of the motion." *Bloate v. United States*, 559 U.S. 196, 205–206 (2010) (Citation modified). Nonetheless, the Court may exclude delay for the preparation of pretrial motions under § 3161(h)(7) when it makes the appropriate findings. *Id.* at 204. Here, the complexity of the case, the volume of the discovery, and the need for time to review the discovery and prepare pretrial motions weigh strongly in favor of granting an ends of justice continuance of the pretrial motions deadline.

Finally, the Government respectfully objects to the defendants' proposed pretrial schedule. First, there is no need to set an arbitrary deadline on the disclosure of voluminous materials. The Government is working to provide those materials as quickly as possible, given their voluminous nature. The Government will continue providing discovery and will also provide the defendants with periodic updates as to the timeline of disclosures. Second, the Government objects to the proposal insofar as it seeks to set defendants' deadline for the parties to alert the Court if they *anticipate* filing pretrial motions to December 14, while ultimately setting the pretrial motions deadline to December 21. This schedule leaves the parties and the Court with considerable uncertainty as to whether the trial will proceed in January 2027. A party might alert the Court that they anticipate filing a motion but then decide not to file a motion after all, just two weeks before jury selection. This could lead the Court and other parties to believe that trial was likely to be continued, then leave them scrambling if no motion is filed. Alternatively, setting the motions deadline so close to trial could also result in the Government unnecessarily arranging for out-of-state witnesses to travel. The December 28 proposed motions *in limine* deadline is equally problematic. With 8 parties potentially filing motions *in limine* and responses, the filings are likely to be significant. The Court will have little time to take these motions under advisement and issue rulings prior to a January trial.

To avoid these problems, the Government respectfully requests that the Court set a firm deadline of December 4, at which time the parties would be required to: (1) alert the court as to whether they are firm for trial in January; (2) file any motion to continue trial; (3) file any motion for protection of dates; and (4) file a motion for a certain trial date. The Government further suggests that if, on December 4, it appears that trial will

commence in January, that the Court schedule a pretrial conference to discuss and set the trial and motions *in limine* schedule. The Government further requests that the Court set the deadline for all parties to file expert disclosures to December 15.

The Government recognizes that the defendants will likely need additional time to review discovery and prepare motions and believes that a longer ends-of-justice continuance of both the trial and pretrial motions deadline would be appropriate. Given the complexity of this case and the Government's need to arrange for the appearance of multiple out-of-state witnesses, the defendants' proposed schedule for pretrial filings is unworkable. After the Court resolves the instant motion, the Government will continue to confer with the defendants in an effort to reach agreement on a realistic trial and motions schedule that affords all parties adequate time to prepare for trial in this complex case.

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court continue the pre-trial motions deadline to December 4, 2026, and continue trial to January 4, 2027. The Government further requests that that the Court find that the ends of justice served by granting the continuances outweigh the public's and defendant's interests in a speedy trial and exclude the time from computation under the Speedy Trial Act. The Government further requests that the Court set such additional pretrial filing deadlines as requested herein.

Respectfully submitted,

ANDREW B. BENSON
United States Attorney

Dated: November 23, 2026

By: *<u>/s/ Nicholas M. Scott</u>*
Nicholas M. Scott
Assistant U.S. Attorney

*<u>/s/ Sarah A. Kiewlicz</u>*
Sarah A. Kiewlicz
Assistant U.S. Attorney

U.S. Attorney's Office
100 Middle Street
Portland, ME 04101
(207) 780-3257
Nicholas.Scott@usdoj.gov
Sarah.Kiewlicz@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on November 23, 2026, I caused the foregoing Motion to Continue and Response to Defendant's Proposed Pretrial Schedule, using the CM/ECF system, which sent notification of such filing to all counsel of record.

ANDREW B. BENSON
United States Attorney

By: *<u>/s/ Nicholas M. Scott</u>*
Nicholas M. Scott
Assistant U.S. Attorney
U.S. Attorney's Office
100 Middle Street
Portland, ME 04101
(207) 780-3257
Nicholas.Scott@usdoj.gov